1

2

3

4

5

6

7

8

9

10

11

12

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

TABITHA C. BANNISTER,

                                    Plaintiff,

                v.

CAROLYN W. COLVIN, Acting Commissioner
of Social Security,

                                    Defendant.

Case No. C15-1741-RAJ

**ORDER AFFIRMING THE COMMISSIONER'S FINAL DECISION AND DISMISSING THE CASE WITH PREJUDICE**

13

14

15

16

17

18

        Tabitha C. Bannister seeks review of the denial of her application for Supplemental Security Income and Disability Insurance Benefits.  Ms. Bannister contends the ALJ erred in determining her residual functional capacity (RFC), in evaluating her credibility, and in finding there were other jobs in the national economy that she could perform.  Dkt. 14 at 1-2.  As discussed below, the Court **AFFIRMS** the Commissioner's final decision and **DISMISSES** the case with prejudice.

19

                                    **BACKGROUND**

20

21

22

23

        In February 2012, Ms. Bannister applied for benefits, alleging disability as of January 7, 2010.  Tr. 25, 237, 239.  Ms. Bannister's applications were denied initially and on reconsideration.  Tr. 100-164.  After the ALJ conducted a hearing on October 21, 2013, the ALJ

1   issued a decision finding Ms. Bannister not disabled.  Tr. 25-44.

2   **THE ALJ'S DECISION**

3   Utilizing the five-step disability evaluation process,[1] the ALJ found:

4   **Step one:**  Ms. Bannister has not engaged in substantial gainful activity since January 7,
    2010, the alleged onset date.

5

6   **Step two:**  Ms. Bannister has the following severe impairments: chronic renal failure,
    organic mental disorder, and anxiety disorder.

7   **Step three:**  These impairments do not meet or equal the requirements of a listed
    impairment.[2]

8

9   **Residual Functional Capacity:**  Ms. Bannister can "perform light work as defined in 20
    CFR 404.1567(b) and 416.967(b) except she is able to carry out simple routine tasks with
    customary breaks and lunch.  She can have occasional contact with supervisor[s] and/or
10  coworkers.  She can have no contact with public for work tasks, but incidental contact
    with the public is not precluded.  Her occupations or job duties must emphasis [sic] on
11  dealing with things or objects rather than people.  She must work in low stress
    environment, defined as only occasional changes in the work environment.  Her job
12  duties should not take her away from bathroom, such as traveling from one site to
    another.  She occasionally will need instructions repeated if more than three steps, which
13  can occur with regular supervisor contact or the ability to refer to company handbook for
    duties or personal notes."

14

15  **Step four:**  Ms. Bannister cannot perform past relevant work.

    **Step five:**  As there are jobs that exist in significant numbers in the national economy that
16  Ms. Bannister can perform, she is not disabled.

17  Tr. 25-44.  The Appeals Council denied Ms. Bannister's request for review making the ALJ's

18  decision the Commissioner's final decision.  Tr. 8-11.[3]

19
    **DISCUSSION**
20

    A.      **Ms. Bannister's Testimony**
21

22  ---
    [1] 20 C.F.R. §§ 404.1520, 416.920.
    [2] 20 C.F.R. Part 404, Subpart P. Appendix 1.
23  [3] The rest of the procedural history is not relevant to the outcome of the case and is thus omitted.

ORDER AFFIRMING THE
COMMISSIONER'S FINAL DECISION AND
DISMISSING THE CASE WITH PREJUDICE
- 2

1    Ms. Bannister contends the ALJ erred in discounting her subjective symptom statements

2 concerning the severity of her impairments.[4]  Dkt. 14 at 11-17.  The Court disagrees.

3    To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent

4 reasons for the disbelief."  *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995) (citation omitted).

5 A general assertion that the claimant is not credible is not sufficient, rather, the ALJ "must

6 identify what testimony is not credible and what evidence undermines the claimant's

7 complaints."  *Id.; see also Dodrill v. Shalala,* 12 F.3d 915, 918 (9th Cir. 1993).  Unless

8 affirmative evidence shows the claimant is malingering, the ALJ's reasons for rejecting the

9 claimant's testimony must be "clear and convincing."  *Lester*, 81 F.2d at 834.  If the "ALJ's

10 credibility finding is supported by substantial evidence in the record, [the court] may not engage

11 in second-guessing."  *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (internal citation

12 omitted).  Here, although some of the reasons cited by the ALJ for rejecting Ms. Bannister's

13 testimony were not reasonable[5], several of the ALJ's reasons to do so were valid and supported

14 by substantial evidence.

---

16 [4] Ms. Bannister argues, in reply, that this matter should also be remanded for the ALJ to evaluate her subjective symptom testimony and statements pursuant to the new Social Security Ruling (SSR) 16-3p.  Dkt. 16 at 6-7.  SSR 16-3p – Evaluation of Symptoms in Disability Claims –
17 became effective on March 16, 2016.  SSR 16-3p, *available at* 2016 WL 1119029 (S.S.A. Mar. 16, 2016).  The Ruling supersedes SSR 96-7p, eliminates the term "credibility" from the Social
18 Security Administration's policy, and clarifies that "adjudicators will not assess an individual's overall character or truthfulness."  *Id.* at 1, 10.  Here the ALJ's decision came two years before
19 SSR 16-3p and, thus, he could not have applied the new SSR.  There is no binding precedent interpreting the new ruling or indicating whether it applies retroactively.  However, because the
20 ALJ's findings are adequate under either standard, the Court need not reach this issue.
[5] Some of the ALJ's interpretations of the evidence were not reasonable.  For instance, the fact
21 that Ms. Bannister receives support from social welfare systems does not, in and of itself, raise doubts about her medical problems or imply that her unemployment is "simply a lifestyle
22 choice."  Tr. 35.  However, because the ALJ provided other valid reasons supported by substantial evidence to discount Ms. Bannister's testimony, the inclusion of other erroneous
23 reasons is harmless.  *See Carmickle v. Comm'r Social Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th

ORDER AFFIRMING THE
COMMISSIONER'S FINAL DECISION AND
DISMISSING THE CASE WITH PREJUDICE
- 3

Specifically, the ALJ noted that Ms. Bannister's allegations of total physical disability were inconsistent with physical examinations during the subject period. Tr. 35. A determination that a claimant's complaints are "inconsistent with clinical observations" may satisfy the clear and convincing requirement. *Regenniter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1297 (9th Cir. 1998); *see Carmickle*, 533 F.3d at 1161 ("Contradiction with the medical record is a sufficient basis to reject the claimant's subjective testimony"); SSR 96-7p, *available at* 1996 WL 374186 (S.S.A. July 2, 1996); SSR 16-3p at *6 ("We will consider an individual's statements about the intensity, persistence, and limiting effects of symptoms, and we will evaluate whether the statements are consistent with objective medical evidence and the other evidence."). Ms. Bannister contends she alleged disability due to both physical and mental impairments and that the ALJ's characterization of her testimony as alleging "total physical disability" is inaccurate. Dkt. 14 at 13. However, the ALJ addressed Ms. Bannister's allegations of both physical and mental impairments in his decision. Moreover, at the hearing, Ms. Bannister testified she was unable to work, in part, because she couldn't stand up, walk or lift anything due to pain in her back, sides and abdomen. Tr. 64-70. Although perhaps inartfully stated, given this testimony it was not unreasonable for the ALJ to characterize Ms. Bannister's testimony as alleging debilitating physical symptoms. Moreover, despite these allegations, the ALJ noted that providers observed Ms. Bannister was able to move without apparent distress or pain and walk without apparent difficulty, that she had normal range of motion of all extremities, full strength in her limbs, and that examination and imaging of her abdomen showed normal results with generally mild tenderness. Tr. 35, 370, 353, 449, 459, 468, 484, 542. Furthermore, while at some examinations Ms. Bannister did exhibit CVA tenderness, other examinations revealed no

Cir. 2008).
ORDER AFFIRMING THE
COMMISSIONER'S FINAL DECISION AND
DISMISSING THE CASE WITH PREJUDICE
- 4

CVA tenderness and that her back was normal on inspection. Tr. 35, 370, 353, 542. On this record, it was reasonable for the ALJ to find Ms. Bannister's allegations of debilitating physical symptoms inconsistent with the results of her physical examinations and clinical observations. This was a valid reason to discount Ms. Bannister's testimony and it is supported by substantial evidence in the record.

The ALJ also noted that Ms. Bannister's reported daily activities were "inconsistent with her allegation of severely limiting symptoms." Tr. 34. In evaluating a claimant's testimony, the ALJ may consider "whether the claimant engages in daily activities inconsistent with the alleged symptoms." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1040 (9th Cir. 2007); SSR 96-7p; SSR 16-3p (claimant's daily activities among the factors properly considered in evaluating the intensity, persistence, and limiting effects of symptoms). An ALJ may discount a claimant's subject symptom testimony based on her daily activities on two grounds: 1) where the daily activities contradict the claimant's other testimony; and 2) where the activities indicate capacities transferable to a work setting. *See Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). "Even [when those] activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of totally debilitating impairment." *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012). Here despite testifying that she was unable to stand up, walk or lift anything, and that she experienced debilitating pain, lightheadedness, fatigue, nausea, and severe anxiety, Ms. Bannister reported she kept busy by cleaning house and walking, and that she was able to take public transportation, shop independently, spend time with friends, take parenting classes, and travel (from Whidbey Island to Mount Vernon) to visit her daughter twice a week. Tr. 29, 34, 296, 93-98, 652. The ALJ also noted that Ms. Bannister had been able to engage in work-like activities during the period at

ORDER AFFIRMING THE
COMMISSIONER'S FINAL DECISION AND
DISMISSING THE CASE WITH PREJUDICE
- 5

issue.  Tr. 34.  Specifically, the ALJ pointed out that Ms. Bannister was able to work for Job

Corps between November 2010 and January 2011 where she reported she performed duties such

as cleaning and acting as a nurse's assistant.  *Id.*, Tr. 271, 275, 326, 352, 59.  It was reasonable

for the ALJ to find these activities inconsistent with Ms. Bannister's allegations of debilitating

symptoms and that her work at Job Corp indicated capacities transferable to the work setting.  Tr.

34-45.  This was a valid reason to discount Ms. Bannister's testimony and it is supported by

substantial evidence in the record.

       The ALJ also noted that Ms. Bannister was not entirely compliant with her treatment plan

during the relevant time period.  Tr. 37-38.  An ALJ may cite an "unexplained, or inadequately

explained, failure to seek treatment or follow a prescribed course of treatment" as a basis to

discredit a claimant's alleged symptoms.  *Fair v. Bowen*, 885 F.2d 597, 603-04 (9th Cir. 1989);

SSR 96-7p; SSR 16-3p at *8 ("We will consider an individual's attempts to seek medical

treatment for symptoms and to follow treatment once it is prescribed in evaluating whether

symptom intensity and persistence affect the ability to perform work-related activities").   The

ALJ noted that, despite the reported significant problem, Ms. Bannister failed to attend several

follow-up medical appointments related to her kidney dysfunction.  Tr. 37, 347-48, 440.  The

ALJ noted that Ms. Bannister offered an explanation for her failure to attend *a* follow-up

doctor's appointment on the grounds that she could not afford the gas to get there.  Tr. 37, 448,

486.  However, there is evidence that Ms. Bannister missed numerous follow-up appointments

and the ALJ reasonably discounted lack of gas money as a blanket explanation on the grounds

that she was receiving financial assistance from the State.  Tr. 37, 347-48, 440.  It was reasonable

for the ALJ to conclude that if Ms. Bannister's physical symptoms were as severe and

debilitating as she claimed she would have sought out treatment more regularly and returned for

ORDER AFFIRMING THE
COMMISSIONER'S FINAL DECISION AND
DISMISSING THE CASE WITH PREJUDICE
- 6

1   follow-up appointments.  *See Rollins v. Massanari*, 261 F.3d 853 (9th Cir. 2001) (even where

2   evidence admits to other reasonable interpretations, where the ALJ's interpretation is reasonable

3   and supported by substantial evidence the Court will not second-guess it).

4            Accordingly, the ALJ did not err in discounting Ms. Bannister's credibility.

5   **B.       RFC**

6            *1.       Organic Mental Disorder*

7            Ms. Bannister contends the ALJ erred by failing to delineate which specific functional

8   limitations resulted directly from her organic mental disorder.  Dkt. 14 at 6-8.  The Court

9   disagrees.

10           Social Security Ruling (SSR) 96-8p provides that "[i]n assessing [residual functional

11  capacity], the adjudicator must consider limitations and restrictions imposed by all of an

12  individual's impairments, even those that are not 'severe.'"  SSR 96-8p *available at* 1996 WL

13  374184 at *5.  Here, the ALJ found organic mental disorder as well as anxiety disorder were

14  severe mental impairments at step two and proceeded to discuss Ms. Bannister's mental

15  impairments, symptoms and limitations in formulating the RFC.  Tr. 28, 32-44.  Ms. Bannister

16  notes, in conclusory fashion, that Dr. Lena Swanson gave her a provisional diagnosis of

17  Cognitive Disorder NOS, and indicated that she,

18               had some difficulties following instructions and repeating a simple
                 sentence due to apparent agitation, and she is mildly to moderately
19               limited in her ability to understand, remember, and carry out short simple
                 instructions.  She may be moderately to markedly limited in her ability to
20               understand, remember, and carry out more complex and detailed
                 instructions and appears moderately limited in her ability to make work-
21               related judgments and decisions.

22  Dkt. 14 at Tr. 450.  However, aside from reciting Dr. Swanson's findings, Ms. Bannister makes

23  no substantive argument.  *See Indep. Towers of Wash. v. Washington,* 350 F.3d 925, 929-30 (9th

ORDER AFFIRMING THE
COMMISSIONER'S FINAL DECISION AND
DISMISSING THE CASE WITH PREJUDICE
- 7

1   Cir. 2003) ("'A bare assertion of an issue does not preserve a claim ....' *D.A.R.E. America v.*

2   *Rolling Stone Magazine,* 270 F.3d 793, 793 (9th Cir.2001) (internal quotations omitted)."

3   Rather, to preserve a claim for review, "[w]e require contentions to be accompanied by

4   reasons.").  Moreover, the ALJ discussed Dr. Swanson's findings and included limitations in Ms.

5   Bannister's RFC to simple routine tasks and that she would occasionally need instructions

6   repeated if more than three steps.  Tr. 32.  Ms. Bannister does not argue that these limitations

7   were insufficient to account for Dr. Swanson's findings nor does she point to any other

8   functional limitations resulting from her organic mental disorder that the ALJ failed to account

9   for in the RFC.

10          Accordingly, Ms. Bannister fails to establish the ALJ harmfully erred in considering her

11   organic mental disorder or in formulating the RFC.  *See Molina v. Astrue*, 674 F.3d 1104, 1111

12   (9th Cir. 2012) (Court may reverse only where an error is harmful and "the burden of showing

13   that an error is harmful normally falls upon the party attacking the agency's determination."

14   (quoting *Shinseki v. Sanders*, 556 U.S. 396, 409, 129 S.Ct. 1696, 173 L.Ed.2d 532 (2009))).

15          ***2.***      ***Internal Inconsistency***

16          Ms. Bannister contends the ALJ's RFC finding is internally inconsistent and that this

17   alone requires reversal.  Dkt. 14 at 5.  The Court disagrees.

18          Ms. Bannister argues that the limitation in the RFC to "occasional contact with

19   supervisor[s]" conflicts with the limitation that she "occasionally will need instructions repeated

20   if more than three steps, which can occur with *regular supervisor contact* or the ability to refer to

21   company handbook for duties or personal notes."  Tr. 32 (emphasis added).  On their face, these

22   limitations appear to be inconsistent.  However, the apparent conflict (between occasional and

23   regular supervisory contact) arises only with respect to jobs requiring the ability to follow

ORDER AFFIRMING THE
COMMISSIONER'S FINAL DECISION AND
DISMISSING THE CASE WITH PREJUDICE

1    instructions with more than three steps.  In this case, the apparent inconsistency in the ALJ's

2    RFC determination does not affect the final non-disability determination because the ALJ did not

3    find Ms. Bannister could perform jobs requiring more than three steps.  *See Molina*, 674 F.3d at

4    1115 ("an ALJ's error is harmless where it is 'inconsequential to the ultimate nondisability

5    determination'" (quoting *Carmickle*, 533 F.3d at 1162)).

6         At the hearing, the ALJ presented a first hypothetical containing all RFC limitations

7    except the limitations for jobs requiring more than three steps.  Tr. 82-83.  Based on the first

8    hypothetical, the VE testified Ms. Bannister could perform the jobs of office helper, small

9    products assembler, and inspector and hand packager.  *Id.*  The ALJ then posed a second

10   hypothetical adding the limitation that such individual would "occasionally … need instructions

11   repeated if more than three steps, which can occur with *regular supervisor contact* or the ability

12   to refer to company handbook for duties or personal notes."  Tr. 83.  Based on the second

13   hypothetical, the VE testified that Ms. Bannister could still perform the jobs previously identified

14   because the jobs would require "no more than those couple [i.e. three] … steps."  Tr. 84.

15   Because the jobs identified by the VE, and relied upon by the ALJ at step five, would not require

16   more than three steps the outcome of the case is not affected by the apparent inconsistency in the

17   RFC.  Thus, Ms. Bannister failed to establish the apparent inconsistency in the RFC was a

18   harmful error.  *See Molina*, 674 F.3d at 1115.

19   **C.    Step Five**

20        Ms. Bannister contends the ALJ harmfully erred in failing to inquire whether the VE's

21   testimony conflicted with the Dictionary of Occupational Titles (DOT).  Dkt. 14 at 8-11.  Due to

22   this error, Ms. Bannister argues, the ALJ's step five determination is not supported by substantial

23   evidence.  *Id.*  The Court disagrees.

ORDER AFFIRMING THE
COMMISSIONER'S FINAL DECISION AND
DISMISSING THE CASE WITH PREJUDICE
- 9

1    When a VE testifies about the requirements of a job, the ALJ has an "affirmative

2    responsibility" to inquire whether the testimony conflicts with the DOT and, if so, to obtain a

3    reasonable explanation for any apparent conflict.  Social Security Ruling (SSR) 00-4p, 2000 WL

4    1898704 (Dec. 4, 2000); *see Massachi v. Astrue*, 486 F.3d 1149, 1152-53 (9th Cir. 2007).

5    However, the ALJ's failure to inquire about any possible conflict, or obtain a reasonable

6    explanation for the conflict, constitutes a harmless procedural error where no conflict exists or

7    the VE provides "sufficient support for her conclusion" justifying any potential conflicts.  *See*

8    *Massachi*, 486 F.3d at 1154 n. 19.  Here, the ALJ did err in failing to inquire whether the VE's

9    testimony regarding the job requirements for the jobs of office helper, small products assembler,

10   and inspector and hand packager, conflicted with the DOT.  However, as discussed below, the

11   error was harmless because no apparent conflict exists between the VE's testimony and the

12   DOT.

13        Ms. Bannister argues the VE's testimony conflicts with the DOT because his

14   interpretation of the "simple routine tasks" limitation in the RFC falls within the scope of DOT

15   General Educational Development (GED) Reasoning Level 1 requirements, while the jobs he

16   identified require Reasoning Level 2.  Dkt. 14 at 9-10.  The DOT outlines six GED Reasoning

17   Levels that range from Level One (simplest) to Level Six (most complex).  *See* DOT, App. C,

18   1991 WL 688702.  Reasoning Level 1 requires the ability to "[a]pply commonsense

19   understanding to carry out simple one- or two-step instructions.  Deal with standardized

20   situations with occasional or no variables in or from these situations encountered on the job."  *Id.*

21   Reasoning Level 2 requires the ability to "[a]pply commonsense understanding to carry out

22   detailed but uninvolved written or oral instructions.  Deal with problems involving a few

23   concrete variables in or from standardized situations."  *Id.*  Ms. Bannister contends the VE

ORDER AFFIRMING THE
COMMISSIONER'S FINAL DECISION AND
DISMISSING THE CASE WITH PREJUDICE
- 10

1    interpreted the ALJ's limitation to "simple routine tasks" to mean tasks not exceeding "a couple"

2    or two steps. Dkt. 14 at 8-9.  It is true that a limitation to two-step instructions would be

3    consistent with Reasoning Level 1 jobs and inconsistent with the Reasoning Level 2 jobs the VE

4    identified at step five. *See* DOT, App. C, 1991 WL 688702.  However, the VE did not testify

5    that Ms. Bannister was limited to two steps.  Rather, in response to the ALJ's inquiry, the VE

6    testified that the additional limitations for jobs requiring *more than three steps* would not impact

7    Ms. Bannister's ability to perform the jobs of office helper, small products assembler, and

8    inspector and hand packager, because those jobs would not exceed "*those* couple of steps." Tr.

9    84 (emphasis added).  It is clear from the context of the hearing testimony that the VE's

10   reference to "those couple of steps" refers to three, rather than two, steps.  The ability to carry

11   out instructions of three steps or less is not inconsistent with Reasoning Level 2 jobs.  *See* DOT,

12   App. C, 1991 WL 688702; *Ashley v. Astrue*, No. C11-1986, 2012 WL 3599275 (W.D. Wa. July

13   20, 2012); *Hamlett v. Astrue*, No. C11-3818, 2012 WL 469722 (C.D. Ca. Feb. 14, 2012)

14   (correlating Reasoning Level 1 with one and two step instructions and Reasoning Level 2 with

15   three and four-step instructions).

16          Ms. Bannister also argues that the VE's descriptions of the identified jobs as "simple

17   and repetitive, not complex" and "requiring very little or no decision-making" is consistent with

18   Reasoning Level 1 not Reasoning Level 2.  Dkt. 14 at 9-10.  However, limitations to simple,

19   repetitive work have been held consistent with both Reasoning Level 1 and Reasoning Level 2.

20   *See Lara v. Astrue*, 305 Fed. Appx. 324, 326 (9th Cir. 2008) ("someone able to perform simple,

21   repetitive tasks is capable of doing work requiring more rigor and sophistication—in other

22   words, Reasoning Level 2 jobs").  Moreover, a limitation to very little or no decision-making is

23   not, by its terms, inconsistent with requirements of Reasoning Level 2, nor does Ms. Bannister

ORDER AFFIRMING THE
COMMISSIONER'S FINAL DECISION AND
DISMISSING THE CASE WITH PREJUDICE
- 11

cite to any case law or explain her argument that it is inconsistent.  *See Indep. Towers of Wash.,* 350 F.3d at 929-30 (a bare assertion does not preserve a claim); *Avila v. Astrue*, No. C07-1331, 2008 WL 4104300 (E.D. Cal. Sept. 2, 2008) at *2 (unpublished opinion) (*citing Nw. Acceptance Corp. v. Lynnwood Equip., Inc.*, 841 F.2d 918, 923-24 (9th Cir. 1996) (party who presents no explanation in support of claim of error waives issue)).

   Thus, although the ALJ erred in failing to follow the procedural requirements of SSR 00-4p, such error was harmless because no apparent conflict exists between the VE's testimony and the DOT.  Accordingly, the Court finds the ALJ did not err at step five.

## CONCLUSION

   For the foregoing reasons, the Commissioner's final decision is **AFFIRMED** and this case is **DISMISSED** with prejudice.

   DATED this 21st day of September, 2016.

*Richard A. Jones*
_____
The Honorable Richard A. Jones
United States District Judge

ORDER AFFIRMING THE
COMMISSIONER'S FINAL DECISION AND
DISMISSING THE CASE WITH PREJUDICE
- 12